J-S67043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                              :              PENNSYLVANIA
                              :
            v.                    :
                              :
                              :
JEFFERY LINCOLN HUNTER        :
                              :
           Appellant          :   No. 303 MDA 2019

Appeal from the Judgment of Sentence Entered September 6, 2017
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000478-2016

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:           **FILED JANUARY 10, 2020**

Appellant, Jeffery Lincoln Hunter, appeals *nunc pro tunc* from the September 6, 2017, judgment of sentence entered in the Court of Common Pleas of Lycoming County following his conviction by a jury on the charges of simple assault and harassment.[1]  Additionally, Appellant's counsel has filed a petition seeking to withdraw her representation, as well as a brief pursuant to ***Anders v. California***, 386 U.S. 738, 87 S.Ct. 1396 (1967), and ***Commonwealth v. Santiago***, 602 Pa. 159, 978 A.2d 349 (2009) (hereinafter "***Anders*** brief").  After a careful review, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 2701(a)(1) and 2709(a)(1), respectively.

The relevant facts and procedural history are as follows: On December 23, 2015, police charged Appellant with simple assault and harassment, and on June 23, 2017, Appellant, who was represented by counsel, proceeded to a jury trial.

At trial, Tonya Coleman testified that, during the evening of November 27, 2015, she was at the Shamrock Bar in Williamsport, Pennsylvania, and at around 7:00 or 8:00 p.m., she played darts with Appellant, whom she had known for a few months. N.T., 6/23/17, at 13-15. Ms. Coleman testified that, as she played darts with Appellant, they had no disagreements or fights; however, Ms. Coleman won the dart game. *Id.* at 14.

After the dart game ended, Ms. Coleman went to the bar; however, Appellant left the establishment through the front door. *Id.* at 15. Approximately five minutes later, Ms. Coleman exited via the back door. *Id.* Ms. Coleman testified she intended to meet Trina Bogart outside the bar to give her fried mushrooms, which she had ordered. *Id.* at 18.

As Ms. Coleman walked alongside a sidewalk, she saw Ms. Bogart approaching her. *Id.* Ms. Coleman testified she "happened to glance," and she saw Appellant walking up the sidewalk towards the bar. *Id.* at 19. Ms. Coleman specifically testified that, while there was "not a whole lot of lighting[,]" she recognized the person as being Appellant, particularly since she "had just recently seen him...inside the Shamrock." *Id.*

Ms. Coleman testified she yelled to Ms. Bogart "to watch" because she saw Appellant approaching and was not "sure what was going to happen." *Id.* at 20. Ms. Coleman denied that she said anything to Appellant, asked him to join the women, or threatened him. *Id.*

Ms. Coleman testified she handed the fried mushrooms to Ms. Bogart, who then began walking back towards her house. *Id.* at 21. Meanwhile, Ms. Coleman continued waiting near a dumpster by the bar because she was waiting for a friend to drive around from the front of the bar to give her some clothes. *Id.* Ms. Coleman then testified as follows on direct examination:

**Q.** And then what, if anything, occurred while you were there?

**A.** The next thing I remember is I was waking up on the ground covered in blood.

**Q.** Now, before you—before you woke up, who were the last people you remember seeing?

**A.** Just Trina Bogart and [Appellant].

**Q.** When you woke up covered in blood, did you figure out what happened?

**A.** I didn't know what happened.

**Q.** Okay. Did you have any pain anywhere?

**A.** My whole right side was hurting real bad.

**Q.** When you say your whole right side, do you mean your whole body or your face?

**A.** No. Just basically my face.

**Q.** And were you bleeding?

**A.** Yes.

**Q.** Where were you bleeding from?

**A.** My ears, my chin.

**Q.** As a result of being struck, did you have to go to the hospital?

**A.** Yes, ma'am.

*Id.* at 21-22.

Ms. Coleman testified she suffered a broken jaw, which was wired shut for two months. *Id.* at 22. She also suffered injuries to her eardrum requiring the placement of tubes. *Id.* at 23-24.

On cross-examination, Ms. Coleman testified that, prior to the incident, Ms. Bogart and Appellant were in an "off and on" romantic relationship. *Id.* at 26. She testified that she, too, was in a romantic relationship with Ms. Bogart; however, with regard to Appellant, Ms. Coleman testified that, aside from playing darts with him on occasion, she had no other relationship with him. *Id.* Ms. Coleman admitted that she did not see who actually hit her; however, she testified that only she, Ms. Bogart, and Appellant were in the vicinity. *Id.* at 29.

On redirect examination, Ms. Coleman testified that, prior to the attack, she remembers seeing Appellant about ten feet from her, and Ms. Bogart was further away across the street. *Id.* at 31. She cannot remember what happened from the time she saw Appellant ten feet away from her until the time she awoke covered in blood. *Id.*

Trina Bogart testified she knew Appellant, and they had a sexual relationship. *Id.* at 35. She indicated that, on November 27, 2015, she planned to meet Ms. Coleman to pick up some fried mushrooms, and she saw her standing by the dumpster outside of the Shamrock Bar. *Id.* at 36. She testified that, as she walked down the street by the bar, she saw Appellant

crossing the street. *Id.* at 35-36. Ms. Bogart testified she saw Appellant clearly. *Id.* at 36. Ms. Bogart testified the following occurred after Ms. Coleman handed her the fried mushrooms (verbatim):

> I was leaving, getting ready to cross the street, and she stood behind the dumpster because she was waiting on a friend of ours. And she said watch, because I was in the middle of looking back behind me talking to her. And that's when I turned and seen [Appellant] crossing—he crossed the left side of me as I was walking away, [and he was] walking towards her. And I was about 6 feet away, and I heard a thud. So I turned around, and that's when I seen [Ms. Coleman] on the ground. And [Appellant] was walking back towards the opposite side of the Shamrock going towards Walnut Street. And he said that's for telling me to shut up two weeks ago. And you're lucky it was only one hit.

*Id.* at 37.

Ms. Bogart clarified that Appellant directed these statements to Ms. Coleman, who was now lying on the ground, and Appellant was about four or five feet from Ms. Coleman. *Id.* at 39. Ms. Bogart testified that no one else was in the vicinity, and she recognized Appellant's voice. *Id.* Ms. Bogart testified she ran to Ms. Coleman, who had blood coming out of her ear, her glasses were broken, and her face was "all messed up." *Id.* at 40. Ms. Bogart called 911 and remained with Ms. Coleman until the ambulance arrived. *Id.*

On cross-examination, Ms. Bogart explained that the reason Ms. Coleman said "to watch" when Appellant first approached was because Ms. Bogart did not initially see him and he was close enough that, if she turned, she "would have walked in to him." *Id.* at 44. Ms. Bogart admitted she did

not actually see Appellant strike Ms. Coleman because she was beginning to walk away when the assault occurred. *Id.* at 45.

Williamsport Police Officer Tyson Minier testified he responded to the instant assault, and he observed Ms. Coleman lying on the ground covered in blood. *Id.* at 60.

Appellant took the stand and testified he knew Ms. Coleman from playing darts with her at the Shamrock Bar. *Id.* at 62. He indicated he had no animosity towards Ms. Coleman; however, he admitted they had a past verbal argument when he won three straight games of darts, and Ms. Coleman became angry. *Id.* at 63. Appellant indicated he and Ms. Bogart had a sexual relationship. *Id.*

With regard to the events occurring on November 27, 2015, Appellant testified that, after he finished his game of darts with Ms. Coleman, he sat down and drank a beer. *Id.* at 64. He saw Ms. Coleman walk out the back door, and approximately ten or fifteen minutes later, after he finished his beer, he walked out the front door and into the alley. *Id.* at 64-65. He testified it was dark outside, but the area was well illuminated. *Id.* at 65-55.

Appellant testified that as he left the alley he saw Ms. Coleman standing near a telephone pole and Ms. Bogart was walking towards Appellant. *Id.* at 66-67. Appellant indicated he also saw "two teenagers walking down the street[.]" *Id.* at 67. Moreover, he testified he saw a man, who he did not know, cross the street behind Ms. Bogart and walk towards Ms. Coleman. *Id.*

He testified Ms. Bogart was wearing a big, Eskimo-type coat, and thus, he could not see Ms. Coleman until he walked past Ms. Bogart. *Id.* at 68. After he did so, he saw Ms. Coleman lying on the ground near the dumpster. *Id.* Appellant testified he did not see anyone hit Ms. Coleman. *Id.* Appellant specifically denied that he punched or assaulted Ms. Coleman. *Id.* at 69. He further denied ever physically assaulting her or having any animosity towards her. *Id.*

The Commonwealth called Ms. Coleman as a rebuttal witness, and she testified that, on an occasion prior to the instant incident, she saw Appellant as she was walking to the Dollar Store. *Id.* at 77-78. As Appellant passed her on the street, he said "You know, I could knock you out right now if I wanted to." *Id.* at 78. Ms. Coleman testified she believes Appellant never really liked her, and he was aware that she and Ms. Bogart had a romantic relationship. *Id.* at 78-79.

At the conclusion of all testimony, the jury convicted Appellant of the offenses indicated *supra*, and on September 6, 2017, the court sentenced Appellant to an aggregate of 10 months to 24 months minus 1 day in prison.

On September 7, 2017, through newly-retained counsel, Appellant filed a post-sentence motion, which included a claim that the evidence was insufficient to support his convictions. The court denied this post-sentence motion on November 22, 2017. Appellant filed a timely notice of appeal on

December 15, 2017, but his appeal was dismissed on April 25, 2018, due to appellate counsel's failure to file a brief.

Thereafter, Appellant filed a timely petition under the PCRA,[2] and the PCRA court granted Appellant relief. Specifically, the PCRA court permitted Appellant to file a supplemental post-sentence motion *nunc pro tunc* and reinstated Appellant's direct appeal rights *nunc pro tunc*. In his supplemental post-sentence motion, Appellant asserted the verdict was against the weight of the evidence. The court denied this post-sentence motion on February 7, 2019.

Appellant filed a timely, counseled notice of appeal, and the trial court directed Appellant, through counsel, to file a concise statement of errors complained of on appeal. Appellant's counsel filed a statement, which indicated that she intended to file an **Anders/McClendon** brief. The trial court filed a Pa.R.A.P. 1925(a) opinion on July 15, 2019, explaining the reasons it denied Appellant's post-sentence motions.

On October 15, 2019, counsel filed in this Court a petition seeking to withdraw her representation, as well as an **Anders** brief. Appellant filed no further submissions either *pro se* or through privately-retained counsel.

Prior to addressing any issue raised on appeal, we must first resolve counsel's petition to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287,

_____

[2] Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.

290 (Pa.Super. 2007) (*en banc*). There are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on appeal pursuant to which counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted). In addition, our Supreme Court in *Santiago* stated that an *Anders* brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 602 Pa. at 178-79, 978 A.2d at 361. Counsel also must provide the appellant with a copy of the *Anders* brief, together with a letter that advises the appellant of his or her right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa.Super. 2007) (citation omitted). Substantial compliance with the

***Anders*** requirements is sufficient. ***Commonwealth v. Wrecks***, 934 A.2d 1287, 1290 (Pa.Super. 2007).

Herein, counsel contemporaneously filed her petition to withdraw as counsel and ***Anders*** brief. Her brief and petition substantially comply with the technical requirements of ***Anders*** and ***Santiago***. Moreover, counsel has provided this Court with a copy of the letter, which she sent to Appellant advising him of his right to retain new counsel, proceed further with his case *pro* se, and raise any points that he deems worthy of this Court's attention. ***See Commonwealth v. Millisock***, 873 A.2d 748 (Pa.Super. 2005). Therefore, we proceed to examine the issues counsel identified in the ***Anders*** brief and then conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous." ***Commonwealth v. Yorgey***, 188 A.3d 1190, 1195 (Pa.Super. 2018) (*en banc*) (quotation omitted).

In his first issue, Appellant contends the evidence is insufficient to sustain his convictions. Specifically, he asserts "no one saw him hit Ms. Coleman[.]" Appellant's brief at 15.

A successful sufficiency-of-the-evidence claim requires discharge. ***Commonwealth v. Toritto***, 67 A.3d 29 (Pa.Super. 2013) (*en banc*). Whether the evidence was sufficient to sustain the charge presents a question of law. ***Id.*** Our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Walls***, 144 A.3d 926 (Pa.Super. 2016). In conducting our inquiry, we examine:

whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa.Super. 2014) (quotation omitted).

In this case, Appellant's sufficiency argument is specific in nature; to wit, he avers the evidence was insufficient to prove that he committed the crimes. In this vein, Appellant argues no one testified they saw him strike Ms. Coleman and, in fact, he testified that he did not strike her.

In light of Appellant's specific sufficiency claim, we need not conduct a thorough review of the evidence to determine whether it can support a finding that all of the elements have been met. Rather, we will focus on the specific issue raised by Appellant: whether the evidence was sufficient to establish that Appellant was the perpetrator of the crimes.

Here, viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, we conclude the evidence sufficiently establishes that Appellant was the perpetrator of the crimes. As the trial court indicated:

- 11 -

> The testimony of Ms. Coleman and Ms. Bogart was sufficient to prove that Appellant committed [the crimes]. [They testified] Appellant was the only other individual in the vicinity. Appellant approached Ms. Coleman, she was struck, she suffered several injuries including a broken jaw, Appellant walked away and said, "That's for telling me to shut up two weeks ago and you're lucky it was only one hit." Although Appellant denied punching Ms. Coleman and claimed that he saw another individual approaching her, the jury was not required to believe Appellant's testimony.

Trial Court Opinion, filed 7/15/19, at 5.

We agree with the trial court's sound reasoning. We note the jury was free to weigh the testimony and believe all, part, or none of a witness's testimony. *Trinidad*, *supra*. Moreover, contrary to Appellant's assertion, the Commonwealth was permitted to rely on circumstantial evidence to meet its burden of proof. *Commonwealth v. Mucci*, 143 A.3d 399, 409 (Pa.Super. 2016). Accordingly, we reject Appellant's sufficiency of the evidence claim.

In his next issue, Appellant contends the jury's verdicts were against the weight of the evidence. Specifically, Appellant contends the testimony of Ms. Bogart and Ms. Coleman was incredible. Appellant suggests the jury should have believed his credible testimony that an unknown man committed the crimes.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation

omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. **Commonwealth v. Hopkins**, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. **Talbert**, **supra**.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. **See id.**

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Id.** at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Id.** (quotation marks and quotation omitted).

In the case *sub judice*, in rejecting Appellant's claim, the trial court indicated "the jury was free to believe the testimony of Ms. Coleman and Ms. Bogart, and reject the testimony of Appellant." Trial Court Opinion, filed 7/15/19, at 7. We agree with the trial court's sound reasoning. Appellant requests that we re-weigh the evidence and assess the credibility of witnesses

- 13 -

presented at trial, a task that is beyond our scope of review. The jury, as finder of fact, had the duty to determine the credibility of the testimony and evidence presented at trial. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact"). Accordingly, the trial court did not abuse its discretion in denying Appellant's weight of the evidence claim.

After examining the issues contained in the *Anders* brief, we agree with counsel that the appeal is wholly frivolous. "Furthermore, after conducting a full examination of all the proceedings as required pursuant to *Anders*, we discern no non-frivolous issues to be raised on appeal." *Yorgey*, 188 A.3d at 1195. Thus, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

Petition to withdraw as counsel granted. Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/10/2020