J-S17044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT HAYES | : | |
| | : | |
| Appellant | : | No. 3035 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 19, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000822-2021

BEFORE:  BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 5, 2024**

Appellant, Robert Hayes, appeals from the aggregate judgment of sentence of four years' probation, imposed after he was convicted of theft by unlawful taking, 18 Pa.C.S. § 3921(a), receiving stolen property, 18 Pa.C.S. § 3925(a), unlawful use of a motor vehicle, 18 Pa.C.S. § 3928(a), and possession of marijuana, 35 P.S. § 780-113(a)(31).  Appellant challenges the sufficiency of the evidence to sustain all of his convictions, except for possession of marijuana.  After careful review, we affirm.

Appellant's convictions stem from the fact that he was found to be in possession of a vehicle that was owned and reported stolen by his cousin, Ikeasha Hayes (hereinafter, "the victim" or "the complainant").  The victim testified at trial that, in November of 2020, her black, Chevy Impala was stolen while she was incarcerated.  *See* N.T. Trial, 8/1/22, at 8, 11.  The keys to her vehicle had been "hanging up at the door" inside her apartment.  *Id.* at 11.

The victim testified that Appellant was the only person, aside from her children, who had access to those keys, because Appellant had been staying with her from time to time. *Id.* at 10. However, on cross-examination, the victim admitted that the father of her children had also been staying at her house while she was incarcerated. *Id.* at 20.

Nevertheless, the victim identified Appellant in court as the person "who was involved in th[e] theft" of her vehicle. *Id.* at 11. When asked why she believed that Appellant was responsible for her car being stolen, the victim explained:

> [Victim:] Because I had contacted … my [ex-]boyfriend[1] … and asked him did he know where my car was. He said that him [*sic*] and [Appellant] had my car. So he told me he had my car and I tried to get my car back. They wouldn't bring me my car back.

*Id.* at 12-13. The victim also explained that her gun, which she had a permit to carry, was inside the stolen vehicle. *Id.* at 14, 15.

On cross-examination, the victim admitted that when she reported her vehicle (and gun) as stolen, she told police "that [her] ex-boyfriend took it," and made no mention of Appellant. *Id.* at 16. She explained that she initially believed her ex-boyfriend must have "hot wired" the vehicle and taken it, because he had done this to other vehicles in the past. *Id.* at 18. However, when the victim was released from prison and was unable to find her car keys,

---

[1] The victim referred to this individual, who is not the same person as the father of her children mentioned *supra*, as both her boyfriend and ex-boyfriend throughout her testimony. For purposes of clarity, we will refer to him only as her ex-boyfriend herein.

she believed that Appellant had taken the car. *Id.* The victim testified that she did not give Appellant, or her ex-boyfriend, permission to take her vehicle. *Id.* at 21.

Philadelphia Police Officer Frane Markusovic testified next for the Commonwealth. Officer Markusovic testified that on November 28, 2020, he was patrolling in a police vehicle when he observed a black, Chevy Impala traveling southbound several cars in front of the officers' car. *Id.* at 22-23. He said that he saw the "vehicle suddenly pull over to the side of the road … where [a] … gas station is located." *Id.* at 23. The officer found it "very odd that he pulled over so quickly[,]" and he asked his partner, Officer Cipot,[2] to "run the tag" to "verify if everything was okay with the vehicle." *Id.* "[T]he message came back that the vehicle was stolen with [a] gun in the vehicle." *Id.*

Because Officer Markusovic had continued to drive past the parked vehicle while the tag was being run, he "immediately made a U-turn with [his] police vehicle," activated his emergency lights, "and … drove directly towards [the] vehicle that was … still parked…." *Id.* at 23, 24. The officer parked the police car in front of the Chevy Impala and began to get out. *Id.* at 24. Officer Markusovic testified that, "as [he] was getting out of [his] police car," Appellant, who was driving the car, *id.* at 22, "immediately reversed his

---

[2] Officer Cipot's first name is not in the record.

vehicle, and did a … reverse U-turn inside the gas station at a high rate of speed." *Id.* The officer continued:

> [Officer Markusovic:] So, at that point, my partner he was already out of his vehicle, and I observed him run in front of our vehicle, and in front of [Appellant's] vehicle, and order[] [Appellant] multiple times to get his hands up, and get out of the car[,] with his gun drawn. And I did the same thing[,] but I was on his passenger side.

*Id.* At that point, Appellant "immediately got his hands up and … complied."

*Id.* at 25.

The recording from Officer Cipot's body-camera revealed that after he was detained, the officer told Appellant the car was stolen, and Appellant replied that the car was "his bro's" vehicle and that "his bro" was on a trip. *Id.* at 40 (Commonwealth's admitting, as Commonwealth's Exhibit 8, a clip from Officer Cipot's body camera); Commonwealth's Exhibit 8 at timestamp 2:04-2:10. Ultimately, Appellant and the vehicle were searched and Appellant was found to be in possession of a sandwich bag containing marijuana. N.T. Trial at 26. A larger bag of marijuana, as well as drug packaging materials and a scale, were also found in the car. *Id.* at 39. The victim's gun has never been recovered. *Id.* at 15.

At the close of trial, Appellant was convicted of the above-stated offenses. He had also been charged with possession with intent to deliver, possession of drug paraphernalia, and flight to avoid apprehension, but the court acquitted him of those offenses. On October 19, 2022, the court sentenced Appellant to concurrent terms of four years' probation for his theft

by unlawful taking and receiving stolen property convictions.  He received no further penalty for his remaining crimes.

On November 16, 2022, Appellant filed a timely notice of appeal.[3]  He also complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court filed a Rule

_____

[3] We note that, on November 17, 2022, Appellant filed a "Motion to Waive Outstanding Court Costs, Fines and Fees," asserting that the trial court had jurisdiction to entertain the motion pursuant to Pa.R.Crim.P. 706(C).  On Monday, November 21, 2022, an "Amended Sentencing Order" was entered. However, we could not locate a copy of the written "Amended Sentencing Order" in the certified record.  Instead, the record contains only a "Short Certificate" filed by the clerk of courts stating: "I hereby certify, that on this 21st day of November, 2022: The Court orders fines, court costs and supervision fees remitted in the above matter."  **See** Short Certificate, 11/21/22, at 1 (single page).  The comment for the "Amended Sentencing Order" docket entry states: "Defense motion to amend the sentence originally imposed on 10/19/22 is granted," and "[s]entencing amended to re[fl]ect that court costs and fines are waived by the Court."  Docket Entry "Amended Sentencing Order," 11/21/22.

However, the "Motion to Waive Outstanding Court Costs, Fines and Fees" was filed after the instant notice of appeal was pending.  **See** Pa.R.A.P. 1701(a) (providing that, "after an appeal is taken[,] … the trial court or other government unit may no longer proceed further in the matter"); Pa.R.A.P. 1701(b)(3)(i)(ii) (stating that, after the notice of appeal is filed, the trial court may grant reconsideration of the order which is the subject of the appeal, if the application for reconsideration of the order is filed "within the time provided or prescribed by law," and the order expressly granting reconsideration is filed in the trial court "within the time prescribed by these rules"); 42 Pa.C.S. § 5505 ("[A] court upon notice to the parties may modify or rescind any order within 30 days after its entry.").  In the instant appeal, the 30th day from the October 19, 2022 judgment of sentence was Friday, November 18, 2022.  The trial court order reconsidering the October 19, 2022 judgment of sentence was entered on Monday, November 21, 2022.  Thus, it appears that the court lacked jurisdiction to amend Appellant's sentencing order, and this appeal properly stems from the judgment of sentence imposed on October 19, 2022.

1925(a) opinion on June 26, 2023. Herein, Appellant states one issue for our review:

> Was not the evidence insufficient to find Appellant guilty of the offenses of theft by unlawful taking, receiving stolen property and unauthorized use of an automobile in that the evidence failed to prove beyond a reasonable doubt that Appellant unlawfully took the car that had been reported stolen, or knew that the car in his possession had been stolen, or knew or should have known that he was using the car without the authorization of the owner?

Appellant's Brief at 3.

Initially, we observe that,

> "[w]hether the evidence was sufficient to sustain the charge presents a question of law." *Commonwealth v. Toritto*, 67 A.3d 29 (Pa. Super. 2013) (*en banc*). Our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Walls*, 144 A.3d 926 (Pa. Super. 2016). In conducting our inquiry, we examine[,]
>
>> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.
>
> *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quotation omitted).

*Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 436 (Pa. Super. 2021), *appeal denied*, 285 A.3d 879 (Pa. 2022).

In this case, Appellant challenges his convictions for theft by unlawful taking, receiving stolen property, and unauthorized use of a motor vehicle. The trial court explained how the evidence satisfied the elements of these offenses, as follows:

> According to our General Assembly[,] a person is guilty of theft by unlawful taking ("theft") if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof. (18 [Pa.C.S.] § 3921[(a)]…). Movable property is defined as "property, the location of which can be changed." (***Id.***). Here, the evidence is clearly sufficient to support a finding of guilt for Appellant's theft conviction. Aside from the complainant's children, Appellant was one of only two known persons with access to the car's keys. … Appellant was also arrested while in physical possession of the car. Appellant's brief attempt to flee from police is clear evidence that … Appellant had no intent to return the car to its owner.
>
> Additionally, a person is guilty of receiving stolen property if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner. (18 [Pa.C.S.] § 3925[(a)]…). As used in this section, the word "receiving" means acquiring possession, control or title, or lending on the security of the property. (***Id.***). Generally, a defendant may be found guilty of receiving stolen property where such a defendant has "guilty knowledge" of the property's stolen status as is provable through circumstantial or direct evidence. (***Com[monwealth] v. Carson***, … 592 A.2d [1318, 1322] ([Pa. Super.] 1991)).
>
> Here, … Appellant is also guilty beyond any reasonable doubt of receiving stolen property. … Appellant received the property under the statute, as evidenced by his physical possession of the property in question at the time of his arrest. Further, … Appellant's actions upon police presence are not indicative of an intent to return the stolen property to its rightful owner. …

Appellant's argument that he did not know the property was stolen and did not believe that it was probably stolen is not supported by the evidence. … Appellant was staying at his cousin's home with her children off and on while she was incarcerated, as he often did before her incarceration as well. Appellant knew or should have known that the car belonged to her. The keys were kept in the house, and the car outside. Again, Appellant's behavior upon police presence is corroborative of guilty knowledge. One who believes the property in question to have been legally acquired[] is not likely to attempt to flee from police.

Finally, our General Assembly has defined unauthorized use of an automobile and other vehicles as follows: A person is guilty of a misdemeanor of the second degree if he operates an automobile, airplane, motorcycle, motorboat, or any motor-propelled vehicle without the consent of the owner. (18 [Pa.C.S.] § 3928[(a)]…). The *mens rea* burden under the unauthorized use of a motor vehicle charge is not as strict as the one for receiving stolen property. It, therefore, follows that the Commonwealth necessarily met its burden for the lesser *mens rea* required for unauthorized use of a vehicle. … **Carson**, … 592 A.2d [at] 1322….

Here, as in … **Carson**,[4] the Commonwealth had clearly proven beyond a reasonable doubt that … Appellant was guilty of

---

[4] In **Carson**, we affirmed Carson's convictions of receiving stolen property and unlawful use of a motor vehicle based on evidence that, shortly after the victim reported his vehicle stolen after hearing "the sound of screeching tires" and "saw that his car was gone," officers observed the vehicle "parked on the sidewalk with the motor off and the doors closed." **Carson**, 592 A.2d at 1320. As the officers approached the car, three men, including Carson, got out of the car and ran. **Id.** Carson, who had been sitting in the front passenger seat, was apprehended a short distance later. **Id.** Carson's arrest took place approximately twenty minutes after the victim had heard the sound of screeching tires. **Id.**

On appeal, this Court addressed, *inter alia*, whether the Commonwealth had proven that Carson knew, or should have known, that the car was stolen and he did not have the owner's permission to operate it. **Id.** at 1321. We noted that, "[w]hile it is clear that mere possession without more is insufficient to show that the defendant knew or should have known that the property was stolen, other facts can make the inference of guilty knowledge reasonable,
*(Footnote Continued Next Page)*

receiving stolen property. Thus, because the *mens rea* for unauthorized use of an automobile is lower, it follows that … Appellant had the requisite *mens rea* to be found guilty of unauthorized use of an automobile. Further, the owner of the vehicle was incarcerated at the time it was taken and could not have consented to … Appellant's use of it except through express oral or written consent. The owner testified that she is … [Appellant's] cousin and she never gave … [him] (or anyone else) permission to take her vehicle while she was incarcerated.

Trial Court Opinion, 6/26/23, at 3-5.

On appeal, Appellant challenges the trial court's decision, insisting that the Commonwealth did not demonstrate that he stole the vehicle, that he knew or should have known the car had been stolen, or that he was aware he was not authorized to drive the car. Appellant stresses that there was no physical damage to the car that would indicate it had been stolen, such as a broken window or damaged steering column. Appellant also points out that the victim admitted that other individuals had access to the keys to the car, including the father of her children, and even the children themselves, whose ages were not revealed at trial. Appellant contends that it is equally reasonable to infer from the evidence presented at trial that the victim's ex-boyfriend took the car and gave it to Appellant, without informing Appellant

_____

even compelling. Such circumstances include but are not limited to the unexplained possession of recently stolen property, flight from the police or other evidence indicating an attempt to avoid capture[,] and the condition of the property indicating a theft." *Id.* (footnotes omitted). We held that the facts of Carson's case were sufficient to demonstrate his guilty knowledge that the car was stolen, including that he was in the vehicle only minutes after it was reported stolen, he and his companions fled from police, and "the stolen car had a broken vent window on the passenger side of the car and a broken steering column." *Id.* at 1321-22.

- 9 -

he had stolen it. According to Appellant, his statement to police that his 'bro' gave him the car supports this scenario. Finally, Appellant disputes that his flight from police was indicative of his consciousness of guilt, arguing that it is just as reasonable to infer that he fled because there was marijuana in the car, and/or he was afraid because police were approaching him with their guns drawn.

We are unconvinced by Appellant's arguments. First, Appellant had access to the victim's car keys and, although he stresses that the victim's children and their father also had access to the keys, no evidence at trial supported an inference that any of those other individuals took the vehicle.

Moreover, the fact that the car had no physical indications of being stolen actually undercuts Appellant's argument that it was equally reasonable to infer that the victim's ex-boyfriend stole the vehicle and gave it to Appellant without telling him the car was stolen. There was no evidence that the victim's ex-boyfriend had access to the keys to the car, which is why the victim had initially believed that her ex-boyfriend had 'hot-wired' the car. The fact that the car was **not** 'hot-wired' but was, instead, driven away with the key that Appellant had access to, makes it more reasonable to infer that Appellant, and not the ex-boyfriend, took the vehicle.

Additionally, Appellant's actions after being stopped by police support this inference, as well as the conclusion that he did not intend to return the vehicle to the victim. Namely, as the police vehicle was driving several cars behind Appellant, he suddenly pulled over to the side of the road and parked,

which Officer Markusovic found to be odd. Then, when the police activated their lights and parked in front of his vehicle, Appellant quickly reversed the car in a U-turn and attempted to flee. While Appellant insists that it is equally reasonable to infer that he fled from police because he had marijuana in the car, and/or he felt unsafe because police had their guns drawn,[5] his fabrication to police after being detained supports that he fled because he knew he was driving a stolen vehicle. Namely, when police notified Appellant that the car was stolen, he falsely told them that the car belonged to his 'bro.' We agree with the Commonwealth that Appellant's "statement constituted a false explanation of possession since [Appellant] had been staying at the victim's home around the time she was incarcerated[,]" and, "therefore, would reasonably have known that his female cousin, not his 'bro,' was the owner…." Commonwealth's Brief at 8.

In sum, Appellant had access to the vehicle's keys; there was no evidence that any other individual who also had access to the keys took the

_____

[5] We note that Appellant contends that Officer Markusovic's testimony "that he and his partner drew their weapons … because of Appellant's action of reversing his vehicle away from police" is "contradicted by the body[-]worn camera videos entered into evidence." Appellant's Brief at 17. According to Appellant, the videos show that the officers drew their weapons **before** he reversed his vehicle and attempted to flee. He insists that "seeing a police officer rushing at him with [a] gun pointed at him fully explains Appellant's reaction of backing away." **Id.** at 17-18. After watching the videos, we disagree with Appellant's description of what is shown. Instead, the videos show that Officer Cipot drew his weapon just as Appellant began reversing the car, and Officer Markusovic drew his gun as he approached the passenger side of the vehicle once Appellant had obeyed Officer Cipot's commands to stop the car and get out on the ground.

- 11 -

car; there was no physical indication that the car had been stolen by means other than the key; Appellant was driving the vehicle and was alone in the car; he attempted to flee from police; and he lied to police about who owned the vehicle. As we concluded in **Carson**, the totality of these facts, viewed in the light most favorable to the Commonwealth, are sufficient to demonstrate that Appellant took the victim's vehicle, knew he did not have permission to do so, and had no intention to return the car to her. Thus, the evidence is sufficient to support his at-issue convictions.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/5/2024