J-A13031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　:　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　:　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
JEROME MARTIN DAVIS, JR.　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　Appellant　　　　　　 :　No. 1424 WDA 2024

Appeal from the Judgment of Sentence Entered June 26, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004117-2020

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:　　　　**FILED: May 29, 2025**

Appellant, Jerome Martin Davis, Jr., appeals from the judgment of sentence of 10½ to 21 years' incarceration, imposed after he was convicted, following a non-jury trial, of attempted homicide (18 Pa.C.S. § 901(a)), two counts of aggravated assault (18 Pa.C.S. § 2702(a)(1) (serious bodily injury) and 18 Pa.C.S. § 2702(a)(4) (deadly weapon)), receiving stolen property (18 Pa.C.S. § 3925(a)), carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)), and persons not to possess a firearm (18 Pa.C.S. § 6105(a)(1)). On appeal, Appellant solely challenges the sufficiency of the evidence to sustain his conviction of carrying a firearm without a license. After careful review, we affirm.

Appellant summarizes the facts of his case, as follows:

[Appellant] and Tracey Shifflett had been dating on and off for approximately [seven] years before the incident. N.T.…, 11/02/2023[,] at 45. Although [Appellant] primarily lived at a

home in the Brighton Heights neighborhood of Pittsburgh, he frequently stayed at and had keys to Shifflett's Wilkinsburg home and was considering permanently moving into the home. *Id.* at 45-46, 63. On the morning of March 11, 2020, [Appellant] called Shifflett, who, on a self-described "three-day binge" marking the anniversary of her mother's death, would not answer her phone. *Id.* at 47-48, 77. After a while, [Appellant] went to the Wilkinsburg home, and [he] became upset with Shifflett because she had not gotten her kids to school. *Id.* at 49. [Appellant] offered to drive the kids to school and, according to Shiflett, [he did so,] bringing Shifflett along with him…. *Id.* at 49-51. According to [Shifflett], afterward, [Appellant] and Shifflett returned to the residence, and they began to argue, and physically fight. *Id.* at 51-52.

During the altercation, Shifflett went upstairs to a bedroom, and [Appellant] followed her…[. A]ccording to Shifflett, [Appellant] drew a pistol from his waistband and shot her. *Id.* at 54-58. Shiflett woke [up] later, in the hospital. *Id.* at 64.

Meanwhile, [as] Wilkinsburg Police Officer Seth Taylor testified, police were called and responded to the residence, discovering a blood smear on a trash can located at the rear of the home, and[] inside[,] a firearm. *Id.* at 154, 165. Forensic investigation of a spent shell casing was consistent with it[s] having been fired from the recovered firearm. *Id.* at 185-86.

For his part, [Appellant] testified … that [for] about a week prior to the incident, he was having difficulty contacting Shifflett. [N.T., 11/03/2023,] at 39-40. He testified that on March 11, 2020, he showed up at Shifflett's house and her oldest daughter stated that Shifflett was upstairs drunk. *Id.* at 42. According to [Appellant's] account, [Appellant] took … Shifflett's children to school himself, without Shifflett. *Id.* at 46. [Appellant] attempted to call Shifflett, but she did not answer her phone. *Id.* He returned to Shifflett's house, letting himself in with his key. *Id.* at 49. [Appellant] found Shifflett in a state of undress[,] and she was drunk and refused to leave the house. *Id.* According to [Appellant], he and Shifflett got into an argument, during which time Shifflett began to express apparent hopelessness and/or suicidal ideation and pointed a gun at herself. *Id.* at 54, 70. According to [Appellant], a struggle ensued over the weapon, resulting [in] Shifflett['s] shooting herself in the head with the weapon. *Id.* at 56. [Appellant] admitted that after calling 911, he went outside and hid the gun

inside of a trash can.  *Id.* at 58-59.  [Appellant] denied that he otherwise possessed a gun on that date.  *Id.* at 61, 75.

Appellant's Brief at 5-7.

At the close of the non-jury trial, the court convicted Appellant of the above-stated offenses.  On June 26, 2024, the court sentenced him to the aggregate term set forth *supra*, which included a consecutive term of three to six years' incarceration for Appellant's conviction of carrying a firearm without a license.  Appellant thereafter filed a post-sentence motion, and later a supplemental post-sentence motion, arguing that his conviction for carrying a firearm without a license could not stand, as he did not possess the firearm in a place other than his "place of abode."  *See* 18 Pa.C.S. § 6106(a)(1) (stating that "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, *except in his place of abode* or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.") (emphasis added).

On October 23, 2024, the trial court issued an order denying Appellant's motion, reasoning, in relevant part, as follows:

[T]he court disagrees that the victim's residence was also [Appellant's] "place of abode" at the time of the incident.  The evidence viewed in the light most favorable to the Commonwealth as verdict-winner established that, at the time of the shooting, [Appellant] was living in the Brighton Heights neighborhood, where he had lived for over a decade, with his daughter and his fiancé (who is not the victim).  At best, the evidence showed that [Appellant] had keys to the victim's residence and would sometimes stay over there in addition to periodically staying the night at his mom's house and [at] his Brighton Heights residence.  The court disagrees that such an arrangement suffices to establish the victim's residence as his own.

Order, 10/23/24, at 1-2 (citations to the record omitted).  Alternatively, the court concluded that, because Shifflett had testified that Appellant pulled the firearm from his waistband, and the evidence showed that Appellant drove his vehicle to Shifflett's residence on the morning of the shooting, "it was reasonable to conclude that [Appellant] drove to the victim's residence with the firearm in his vehicle, thereby violat[ing] [s]ection 6106 in this regard as well." *Id.* at 2.

Appellant filed a timely notice of appeal, and he and the court complied with Pa.R.A.P. 1925.[1]  Herein, Appellant states one issue for our review:

1. Was the evidence at trial quantitatively and/or qualitatively insufficient to support [Appellant's] conviction for firearms not to be carried without a license where there was insufficient evidence that [Appellant] possessed a firearm in a place other than his "place of abode[?"]

Appellant's Brief at 4.

Initially, we observe that,

"[w]hether  the evidence was sufficient to  sustain  the  charge presents a question of law." *Commonwealth v. Toritto*, 67 A.3d 29 (Pa. Super. 2013) (*en banc*).  Our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Walls*, 144 A.3d 926 (Pa. Super. 2016).  In conducting our inquiry, we examine[,]

whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt.  We may not weigh the evidence or substitute our

---

[1] Instead of filing an opinion, the court issued an order declaring that it was relying on the rationale set forth in its October 23, 2024 order denying Appellant's post-sentence motion. *See* Order, 1/9/25, at 1-2.

- 4 -

judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quotation omitted).

*Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 436 (Pa. Super. 2021), *appeal denied*, 285 A.3d 879 (Pa. 2022).

As set forth *supra*, the Crimes Code excepts from penalty a person's carrying a concealed firearm without a license in their "place of abode." 18 Pa.C.S. § 6106(a)(1). Here, Appellant contends that the evidence established that Shifflett's residence was his "place of abode" and, thus, he could not be convicted of carrying a firearm without a license. In discussing the definition of "place of abode," our Supreme Court has stated:

When interpreting a statute, words that are not defined in the statute shall be construed according to their common and approved usage. [*See*] 1 Pa.C.S. § 1903(a). Black's Law Dictionary defines "place of abode" as "[o]ne's residence or domicile." Black's Law Dictionary [at] 1149 (6th [ed.] 1991). Black's further defines domicile as "a person's legal home," and residence as a "place where one actually lives or has a home; a person's dwelling place or place of habitation; an abode; house where one's home is; a dwelling house." Finally, Black's defines dwelling as "the house or other structure in which a person or persons live; a residence; abode; habitation; the apartment or building, or group of buildings, occupied by a family as a place of residence. Structure used as a place of habitation."

*Commonwealth v. Ortiz*, 738 A.2d 403, 404–05 (Pa. 1999) (emphasis and some citations omitted). Additionally, the most recent version of Black's Law Dictionary states that "*[r]*esidence usu. just means bodily presence as an inhabitant in a given place; *domicile* usu. requires bodily presence plus an intention to make the place one's home. A person thus may have more than one residence at a time but only one domicile." Black's Law Dictionary (12th ed. 2024).

Based on these definitions, Appellant contends that, "insofar as a person's place of abode can include his residence, as distinguished from domicile, at least as a matter of law, he can have multiple 'places of abode.'" Appellant's Brief at 14-15. Appellant insists that, here, the evidence showed he had several residences, ***including*** the Wilkinsburg home of Shifflett. ***Id.*** at 16. He explains:

> Certainly, there was evidence of record that suggested that [Appellant] viewed the Shifflett home as another residence, notwithstanding the fact that he maintained a domicile in Brighton Heights. He frequently stayed overnight at the home, and maintained ownership of a set of keys to the residence, until he began arguing with Shifflett.[2] He had been in an on-again, off-again relationship with Shifflett for seven years and was considering moving into the residence full-time. In short, there was evidence that strongly suggested that the Shifflett home, although perhaps not [Appellant's] primary residence, or his "domicile[,"] was at least *a* "residence" encompassed within the meaning of "place of abode" as understood in [s]ection 6106.

---

[2] Shifflett testified that Appellant had a set of keys to her apartment and when she demanded he give them back to her during their argument, Appellant "threw them" at her. N.T., 11/2/23, at 63, 64. The keys were found by police on the floor of the room where Shifflett was shot. ***Id.*** at 63.

*Id.* (citations to the record omitted).

We disagree. When Shifflett was asked at trial who was living at her Wilkinsburg address at the time of the shooting, she replied, "[m]e and my two children." N.T., 11/2/23, at 45. Although she stated that Appellant "was debating on moving in [her] home with [her,]" her testimony was clear that Appellant was ***not yet*** living there. *Id.* at 46. Further proof of this fact is Shifflett's testimony that when she and Appellant began arguing and he pulled a gun out, she "start[ed] screaming at him" to "get the fuck out [of] ***my*** house, we're done…." *Id.* at 56 (emphasis added). Additionally, Shifflett's adult daughter, Tanijah Morris, testified that at the time of the shooting, she was living at the Wilkinsburg home with her "mom and [her] sister." *Id.* at 135.

Based on the testimony of these women, we conclude that Appellant did not reside at the Wilkinsburg home when the shooting occurred. This Court's decision in ***Commonwealth v. Lee***, No. 846 EDA 2022, unpublished memorandum (Pa. Super. filed June 13, 2023), supports this determination.[3] In that case, Lee had been staying with Wanda Ellis "on occasion for over six months." *Id.* at *1. While in Ellis's home, Lee got into a physical altercation with his son and ultimately shot him. *Id.* Lee was subsequently convicted of carrying a firearm without a license, among other offenses. *Id.* at *2. On appeal, he argued that the evidence was insufficient to sustain his conviction

---

[3] ***See*** Pa.R.A.P. 126(b) (stating that unpublished, non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

for that offense because he was inside his residence when the shooting occurred, and there was no proof he "ever concealed the firearm at issue once [he] left his residence." *Id.* at *5 (citation to the record omitted).

The *Lee* panel concluded that the evidence was sufficient to establish "that Lee carried a concealed firearm outside of his place of abode" because the shooting happened at "the residence of Ms. Ellis." *Id.* at *6. We noted that "Ms. Ellis testified that nobody else lived at the property with her[,]" and she said that "Lee was 'just a neighbor'" who lived "in an apartment behind her own apartment." *Id.* Although Lee would occasionally stay at Ms. Ellis's apartment, we did not find this dispositive, in light of Ms. Ellis's testimony that "she lived there alone; and no one was staying with her 'at the time this incident happened' either permanently []or temporarily." *Id.* Thus, the *Lee* panel determined that "the evidence was sufficient to prove that Lee was outside of his place of abode when he concealed the weapon." *Id.*

The same is true instantly. Both Shifflett and her daughter testified that only Shifflett and her two children lived at the Wilkinsburg residence. Appellant does not dispute that he lived "at a home in the Brighton Heights neighborhood of Pittsburgh…." Appellant's Brief at 5. Although he stresses that he had keys to Shifflett's residence and "frequently stayed" there, *id.*, he was not staying at Shifflett's home at the time of the shooting. Notably, Shifflett testified that on the morning of the shooting, Appellant "came over to [her] house from the North Side" because she had not been answering his phone calls "for a few days." N.T., 11/2/23, at 47. Thus, her testimony

established that Appellant was not staying at Shifflett's residence on the day of the shooting, and he had not been staying there for at least several days prior to it.

In sum, the evidence was sufficient to prove that Appellant was not residing with Shifflett either permanently, or temporarily, at the time of the shooting. Accordingly, as in **Lee**, the evidence was sufficient to prove that Appellant was not in his place of abode when he possessed a concealed firearm. Therefore, no relief is due.

Judgment of sentence affirmed.


Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

5/29/2025