**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Joseph TORITTO Jr., Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 2012.

Filed May 16, 2013.

**32**

Jerome M. Brown, Philadelphia, for appellant.

William R. Toal, III, Assistant District Attorney, Media, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BOWES, GANTMAN, PANELLA, SHOGAN, ALLEN, LAZARUS, MUNDY, AND WECHT, JJ.

OPINION BY PANELLA, J.:

We granted en banc review in this case to principally address the issue of the sufficiency of the evidence to sustain a conviction of accomplice liability for a narcotics transaction. In an interesting development following trial, the jury convicted the Appellant, Joseph Toritto, Jr., under an accomplice theory, but acquitted him of the conspiracy charge. Toritto argues that his mere presence at the time of a drug sale from his cousin to an undercover agent cannot sustain a conviction for accomplice liability. We recognize that a defendant's

association with a perpetrator of a crime, his presence at the scene of the crime, or his knowledge that a crime is being committed are not sufficient to establish his complicity in that crime. However, these cases are fact intensive, which necessitates our close review of the record.

As a consequence of his conviction, which resulted in a substantial sentence of incarceration of seven to fourteen years in light of his prior record and mandatory sentencing requirements, Toritto appealed from the judgment of sentence entered on June 11, 2009, by the Honorable Gregory M. Mallon, Court of Common Pleas of Delaware County. After careful review, we affirm.

The facts of this case are largely undisputed. Toritto drove Charles Tursi to a bar, wherein Tursi consummated a sale of narcotics to Michael McIlmail, an undercover agent for the Attorney General's Office. During the transaction, Toritto gave the keys of his car to Tursi, allowing Tursi to retrieve the narcotics from Toritto's car. Furthermore, Toritto was intermittently present while Tursi discussed the transaction with the undercover agent, but did not participate directly in the transaction. After Tursi sold the drugs to McIlmail, agents from the Attorney General's Office arrested both Tursi and Toritto as they left the bar.

Toritto was subsequently charged with being an accomplice to the delivery of a controlled substance and with criminal conspiracy. A jury convicted Toritto as an accomplice, but, as stated above, acquitted him on the charge of conspiracy. After the denial of Toritto's post-sentence motions, he filed this timely appeal.

Toritto raises the following issues for our review:

1. Where the evidence presented demonstrated only mere presence, was

the evidence insufficient as a matter of law?

2. Where the evidence only demonstrated mere presence, was the verdict against the weight of the evidence and did it shock the conscience?

3. Did the lower [c]ourt err in permitting a case agent to also render an opinion that Appellant was a driver/associate of the principal, especially where the case agent was such a biased source and based his opinion on a dearth of evidence?

4. Did the continuous, biased and gratuitous answers by the case agent, which prejudiced appellant, deny a fair trial?

5. Did the lower [c]ourt err in admitting gossip about a third party, not involved in this case whom the defendant stated was "no good," and then in permitting the case agent to speculate that this comment demonstrated appellant's guilty knowledge?

6. Did the Commonwealth engage in sentencing entrapment when co-defendant Tursi, who was the target of the Commonwealth, was engaged in multiple drug sales, when the Commonwealth already had sufficient sales to sentence Tursi to a minimum 7–14 year sentence, and was Petitioner also entrapped by the actions of the Commonwealth?

7. Is the mandatory sentencing statute pursuant to 18 Pa.C.S. § 7508 unconstitutional as it denies due process and/or equal protection to minor participants in a crime, and/or was it unconstitutional as applied to this case?

Appellant's Brief, at 3–4.

■ Toritto first argues that the evidence at trial was insufficient to establish that he was an accomplice to Tursi's sale of narcotics. Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first. *See Commonwealth v. Stokes*, 38 A.3d 846, 853 (Pa.Super.2011). Our standard of review is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Kendricks*, 30 A.3d 499, 508 (Pa.Super.2011) (citation omitted). We must defer to the finder of fact at the time of trial:

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Stokes*, 38 A.3d 846, 853 (Pa.Super.2011) (quoting *Commonwealth v. Mobley*, 14 A.3d 887, 889–890 (Pa.Super.2011)). Furthermore, "in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Stokes*, 38 A.3d at 854 (quoting *Commonwealth v. Coleman*, 19 A.3d 1111, 1117 (Pa.Super.2011)).

■■■ An accomplice is equally criminally liable for the acts of another "if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense." *Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580, 585 (1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 551 (1999). *See also* 18 PA. CONS. STAT.ANN. § 306. Therefore, the Commonwealth must present evidence capable of establishing not only that the defendant actively participated in the crime, but also that he intended to aid or promote the underlying offense. *See Commonwealth v. Rega*, 593 Pa. 659, 689, 933 A.2d 997, 1015 (2007).

Toritto argues that the evidence at trial was insufficient to establish anything more than mere presence or knowledge of the narcotics transaction. The uncontradicted testimony at trial established that Toritto was at a table with McIlmail and Tursi while aspects of the narcotics transaction were discussed. Although it is equally undisputed that Toritto left the table for stretches of time during the conversation, McIlmail testified that when Toritto left the table, he was usually no more than three feet away, and still capable of overhearing the conversation. *See N.T.*, Trial, 4/7/2009, at 189.

While it was Toritto's hope that the jury would infer that Toritto merely learned of the narcotics transaction after he had already driven Tursi to the bar to meet Agent McIlmail, this was not the inference drawn by the jury, who had the benefit of observing the witnesses and hearing the testimony first-hand. There are sufficient facts to support the jury's conclusion that Toritto had knowledge of and participated in the illegal drug sale.

Pertinently, the jury had the following undisputed evidence before it:

- Toritto drove Tursi to the agreed upon meeting place in Toritto's car where the drugs were hidden;
- Toritto sat with Tursi and McIlmail while they discussed the sale of illegal drugs, and although he got up now and then, he usually remained within listening distance;[1]
- When McIlmail cautioned Tursi about Toritto's presence at the drug sale, Tursi told McIlmail that Toritto was his cousin and "was good";[2]

1. Agent McIlmail's testimony was that the three of them sat for about twenty minutes while Tursi and McIlmail conversed, in code, about the sale of illegal drugs. However, later in the meeting, Toritto and McIlmail engaged in additional discussions, which confirmed Toritto's knowledge of drug lingo. For example, Toritto used terms such as "half a brick" and "8–ball," which Agent McIlmail testified were references to specific amounts of cocaine. N.T., Trial, 4/7/09, at 221, 224.

2. Agent McIlmail testified to the following:

Q: Towards the end of that excerpt you had mentioned, look I don't want to talk around him. I don't know him. Who were you speaking about at that point in time?

A: Mr. [Toritto]. I wanted to try and come off like I was, you know, another drug dealer who was always cautious and what not and didn't know him. And Mr. [Tursi] assured me everything was okay.

Q: How did—what did you take it to mean when Charles [Tursi] said, he's my cousin, he's good?

- When McIlmail asked Tursi about another individual named "Vincent Valone," Toritto interjected and spoke directly to McIlmail that Valone was "no good"; [3]
- The discussion between McIlmail and Tursi about the current drug transaction took place at the table while Toritto was sitting with them;
- After Tursi and McIlmail concluded their conversation about the immediate drug sale, Toritto handed his car keys to Tursi who then retrieved the drugs from Toritto's car;
- After McIlmail handed over $3,200 in cash to Tursi in exchange for the drugs, Toritto suggested to Tursi that he go into the bathroom to count the money.

 Contrary to the argument raised by Toritto, this evidence is not so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Rather, the evidence of record was capable of allowing a reasonable person to draw the inference that Toritto intentionally aided Tursi in the sale of narcotics, first by driving Tursi to the bar, then by remaining with him during the conversations, and finally by giving him the keys to his car to retrieve the drugs. A defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the scene. However, the circumstances change if there is additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. The amount of aid "need not be substantial so long as it

was offered to the principal to assist him in committing or attempting to commit the crime." *Commonwealth v. Murphy*, 577 Pa. 275, 286, 844 A.2d 1228, 1234 (2004).

We therefore conclude that Toritto's first issue on appeal merits no relief.

Next, Toritto contends that the verdict was against the weight of the evidence presented at trial. Our standard of review is again well-settled:

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal, or when "the jury's verdict," at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience."

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

---

A: He's good. I mean, he's [sic] knows what we're doing here. That's why he's here.

N.T., Trial, 4/7/09, at 177–178.

3. Agent McIlmail testified that, based upon this experience, he took this to mean "that he was telling me that Vincent Valone was cooperating with law enforcement." *Id.*, at 206–207. Issues raised by Toritto as to the admissibility of this evidence are addressed *infra*.

*Commonwealth v. Cruz*, 919 A.2d 279, 281–82 (Pa.Super.2007) (citations omitted).

In essence, Toritto reiterates the arguments he set forth above under his challenge to the sufficiency of the evidence. *See* Appellant's Brief, at 25–26 ("Without repeating the lengthy arguments set forth above, which are hereby incorporated by reference, the evidence here was equivocal as to whether Mr. Toritto intended to actively aid in the delivery and then aided Tursi by giving the ride."). In addressing this issue, the trial court provided the following reasoning:

As set forth previously, testimony indicated that [Toritto] drove Mr. Tursi to Coach's Bar in Tinicum. While there a drug transaction occurred between his co-defendant and [the undercover agent.] At trial, the Commonwealth presented the testimony of several agents of the Attorney General's Office who were on site at Coach's Bar on August 30, 2006 and witnessed the drug transaction between Mr. Tursi and [the agent.] The agents testified that [Toritto] was present and sat within a booth with Mr. Tursi and [the agent] while they discussed the particulars of their deal inside the bar. The agents also testified that [Toritto] drove Mr. Tursi to the meeting place in his own vehicle and provided his keys when Mr. Tursi and [the agent] were prepared to go outside and conduct their drug transaction. While this Court agrees with [Toritto's] averment that mere presence does not render one guilty of the crime of possession of a controlled substance with the intent to deliver, that is not the only evidence that was presented at [Toritto's] trial. Testimony adduced at trial indicated that not only did [Toritto] drive Mr. Tursi to the meeting place, he sat at the table while Mr. Tursi and [the

agent] conversed about their deal, he handed Mr. Tursi the keys to his vehicle so that Mr. Tursi could retrieve drugs in order to complete his transaction with [the agent,] and he suggested that Mr. Tursi count the money received from [the agent] following their return from the parking lot after the exchange had transpired. The jury, as finders of fact in [Toritto's] case, was free to believe all, part or none of this evidence in rendering their verdict.

This Court concludes that the outcome of the trial below satisfies our society's common notions of fairness and does not "shock one's sense of justice." As the verdict was not against the weight of the evidence, [Toritto] is entitled to no relief on this claim.

Trial Court Opinion, 4/1/2010, at 11–12.

As noted above, we agree with the trial court that the jury was entitled to infer that Toritto intended to aid the narcotics transaction through his actions. We therefore cannot conclude that the trial court's reasoning represents an abuse of discretion. Accordingly, Toritto's second issue on appeal merits no relief.

■ In his third issue on appeal, Toritto argues that the trial court erred by permitting the undercover agent to opine on Toritto's role as Tursi's driver. Specifically, Toritto objects to the agent's testimony that drug dealers often compensate drivers for their service. *See N.T.*, Trial, 4/7/2009, at 138–139.

At the trial, McIlmail was qualified as an expert in the field of narcotics sales and purchases.[4] He testified that based upon his fourteen years of experience conducting undercover drug purchases, it is not uncommon for people that are present during a drug transaction to be compensated:

4. *See N.T.*, Trial, 4/7/2009, at 142.

Q: And has—in your experience, is it uncommon for people that drive other people making a deal or are in the car with them to receive any money for their services?

A: That's correct. They would receive money, product or both. By product, I mean, the contraband, the illegal drugs.

*Id.*, at 139.

 The qualification of a witness as an expert rests within the sound discretion of the trial court, and the court's determination in this regard will not be disturbed absent an abuse of discretion. *See Commonwealth v. Serge*, 837 A.2d 1255, 1260 (Pa.Super.2003). As stated by this Court:

The standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. *Commonwealth v. Wallace*, 817 A.2d 485 (Pa.Super.2002). . . . A witness does not need formal education on the subject matter of the testimony, and may be qualified to render an expert opinion based on **training and experience**. *Id.*

*Commonwealth v. Malseed*, 847 A.2d 112, 114 (Pa.Super.2004) (emphasis in original) (quoting *Serge*, supra.).

Here, McIlmail testified that he had worked with the Organized Crime Unit of the Attorney General's Office for fourteen years. He additionally testified that he had purchased narcotics undercover approximately 100 times. *See N.T.*, Trial, 4/7/2009, at 138.

As the trial court correctly pointed out, the obvious purpose of this testimony was to show that Toritto was not an innocent bystander, in other words, at the wrong place at the wrong time. The trial court did not abuse its discretion in permitting McIlmail to testify as an expert regarding the common practice of drug dealers, which was outside the province of the jury and assisted them in understanding the evidence.

 In his fourth and fifth issues on appeal, Toritto contends that the judgment of sentence should be reversed due to prosecutorial misconduct during the trial.

Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Commonwealth v. Lewis*, 39 A.3d 341, 352 (Pa.Super.2012) (internal quotes and citations omitted).

Toritto complains of a series of opinions proffered by the undercover agent while testifying, all of which tended to paint Toritto as an "associate" of Tursi without any supporting evidence. Toritto also takes issue with the trial court's decision to permit the undercover agent to testify that Toritto knew of a drug dealer named "Valone" and that "Valone" was "no good."

Defense counsel at trial did a commendable job of guarding against references that painted Toritto as an "associate" or "co-conspirator" of Tursi. However, as even Toritto concedes, "the [trial court] sustained objections to virtually all of

these responses." Appellant's Brief, at 32. In fact, in his argument, Toritto does not identify any such opinion proffered by the agent to which the trial court did not ultimately sustain an objection. As Toritto further acknowledges, the trial court gave the jury a cautionary instruction several times, after sustaining a defense objection, regarding the agent's opinion that Toritto was an associate of Tursi. *See N.T.*, 4/7/2009, at 240; N.T., Trial, 4/8/2009, at 61–62.

The single exception identified by Toritto in his argument is a comment made by the prosecutor during closing argument: "And he tells you that it's not uncommon for people that are selling drugs to come with someone else." *Id.*, at 112. However, we note that the record reveals that defense counsel did not object to this statement either during the closing argument or during the charge conference in chambers.

■ In any event, we conclude that taken in context, and especially mindful of the trial court's repeated instructions to the jury, these statements did not improperly prejudice the jury or prevent a true and fair verdict. If the jury had disregarded the trial court's instruction and placed great weight on the agent's references to Toritto being an "associate" of Tursi, it would have convicted Toritto of criminal conspiracy. At the very least, the jury's finding of not guilty on that charge implies that the jury followed the trial court's cautionary instructions and concluded the Commonwealth did not prove that Toritto was an associate of Tursi.

■ As stated above, Toritto also argues that the trial court erred in admitting evidence of a conversation between Toritto and the undercover agent that occurred after the narcotics transaction had been consummated. Specifically, the conversation centered on a person known to the agent as a drug dealer, i.e., "Valone." Toritto stated that the known drug dealer was "no good." The agent then opined that Toritto was indicating that the drug dealer was "cooperating with law enforcement." N.T., Trial, 4/7/2009, at 207. Defense counsel objected and after a lengthy sidebar and break for the jury, the trial court offered a cautionary instruction. However, defense counsel declined the instruction because, in his opinion, such an instruction at that time would have only served to highlight the agent's testimony. *See id.*, at 214–15.

■ On appeal, Toritto argues that the agent's testimony "is precisely the type of evidence that would suggest a decision on an improper basis. . . . [Toritto's statement that the drug dealer was "no good"] does not mean he had previously agreed to become involved in a drug deal." Appellant's Brief, at 39–40. "The admissibility of evidence is a matter of trial court discretion and a ruling thereon will only be reversed upon a showing that the trial court abused that discretion." *Commonwealth v. Williams*, 58 A.3d 796, 800 (Pa.Super.2012) (citation omitted).

Here, the agent's testimony was probative of the issue of Toritto's state of mind at the time. Furthermore, the jury had been instructed multiple times to treat the agent's opinions on Toritto's state of mind carefully.

Accordingly, we conclude that Toritto's fourth and fifth issues on appeal merit no relief.

■ In his sixth issue on appeal, Toritto argues that he is the victim of sentencing "manipulation" by the Commonwealth.

Sentencing entrapment or manipulation is a doctrine developed and adopted in several Federal Circuit Courts of Appeal. It occurs when a defendant, al-

though predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment. It often is asserted in narcotics matters, typically reverse sting cases, in which government agents determine the amount of drugs a target will purchase. Sentencing entrapment or manipulation is similar to traditional notions of entrapment in that it requires extraordinary misconduct by the government. However, it differs from classic entrapment in that it is not a complete defense to criminal charges and, therefore, cannot serve as a basis for acquittal. Instead, it provides a convicted defendant the opportunity for a reduced sentence, typically in the form of a downward departure from the sentencing guidelines.

*Commonwealth v. Petzold*, 701 A.2d 1363, 1365 (Pa.Super.1997) (citations omitted). To qualify for relief under the doctrine of sentencing manipulation in Pennsylvania, a defendant bears the burden of establishing the existence of intentional outrageous government conduct or extraordinary government misconduct which results in an increased sentence. *See id.,* at 1366.

> Simply put, sentencing entrapment/manipulation is difficult to prove; it is not established simply by showing that the idea originated with the government or that the conduct was encouraged by it, ... or that the crime was prolonged beyond the first criminal act ... or exceeded in degree or kind what the defendant had done before.

*Id.,* at 1366–1367.

■ In the present case, Toritto's argument is that the Commonwealth en-gaged in outrageous conduct by conducting at least seven different buys of similar quantities of narcotics from Tursi before ultimately arresting him. This argument is essentially derivative, as it is based upon a theory that the Commonwealth was acting to manipulate Tursi's sentence and in the process trapped Toritto within a "web of deceit." Appellant's Brief, at 41.

While it may certainly be an acceptable defense tactic to question the Commonwealth's need to engage in so many transactions with Tursi before his arrest, such questioning is far removed from the heavier burden required to establish outrageous conduct. The Commonwealth's proffered explanation for the delay in arresting Tursi, that the Commonwealth was unsure of just how integral Tursi was to the local narcotics market, is facially reasonable. Without more, Toritto is cannot satisfy his heavy burden. As such, we conclude that this issue merits no further discussion on appeal.

In his seventh and final issue on appeal, Toritto challenges the constitutionality of the mandatory minimum sentence statute which was applied, 18 PA. CONS.STAT.ANN. § 7508. Toritto purports to raise three separate arguments of constitutionality.[5] First, he contends that the statute violates the equal protection clause. Second, he argues that the statute does not comport with constitutional standards of due process. Finally, he complains that the statute is unconstitutional as applied in this case.

■ Initially, we note that Toritto's equal protection clause argument funda-

---

5. Toritto provides no *Edmunds* analysis in his brief. Accordingly, we conclude that we may proceed to address this claim under the Constitution of the United States. *See Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) (requiring an appellant to, *inter alia,* identify how the Constitution of the Commonwealth of Pennsylvania offers increased or different protections from the Constitution of the United States in order to preserve an argument that the state constitution offers heightened protection).

mentally misconstrues the clause. The equal protection clause of the Fourteenth Amendment to the United States Constitution provides that "like persons in like circumstances will be treated similarly." *Curtis v. Kline*, 542 Pa. 249, 254, 666 A.2d 265, 267 (1995). Toritto argues that "[c]learly, both Toritto and Tursi were not in similar circumstances ... [yet] Tursi and Toritto received the same sentence." Appellant's Brief, at 46. Toritto argues that this is "fundamentally unfair." *Id.* Clearly, Toritto is not arguing that he was treated differently than another person under similar circumstances.

To the contrary, Toritto argues that the law should not treat accomplices as equivalent to principals in drug crimes. We conclude that this argument does not even raise an equal protection claim. Furthermore, even if it did, we would conclude that the government's interest in addressing narcotics trafficking, which has taken on the character of large business enterprises, certainly satisfies whatever standard of scrutiny would apply.[6]

■ Turning to Toritto's substantive due process challenge, we observe that Toritto's argument does not identify any fundamental right at stake. We therefore must determine whether the mandatory minimum statute at issue rationally serves a legitimate state interest. *See Washington v. Glucksberg*, 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). As stated previously, we conclude that the statute certainly satisfies this standard; the state has a legitimate interest in stopping narcotics trafficking, and this statute is rationally related to that legitimate interest.

Finally, Toritto contends that, for the same reasons he set forth in his two previous constitutional challenges, the statute is unconstitutional as applied in this case. However, Toritto does not develop this argument. There is no discussion of how Toritto's unique circumstances change the analysis employed for the facial challenges, *supra.* As such, we conclude that Toritto has waived this issue for purposes of our review. *See Commonwealth v. Delligatti*, 371 Pa.Super. 315, 538 A.2d 34, 41 (1988).

As we conclude that none of Toritto's issues on review merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

---

6. We make no decision on what such a standard would be, as we have concluded that there is no claim rooted in equal protection jurisprudence. We merely conclude that if there were an equal protection claim contained in Toritto's argument, the statute would survive even the enhanced standard of review applied in *Pickett v. Brown*, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983).