J-A25026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LASANA JAITEH | : | |
| | : | |
| Appellant | : | No. 2615 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 21, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006128-2021

BEFORE: OLSON, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 6, 2025**

Appellant, Lasana Jaiteh, appeals from the Judgment of Sentence entered in the Philadelphia County Court of Common Pleas following his jury conviction of First-Degree Murder, Recklessly Endangering a Person ("REAP"), and Possession of an Instrument of Crime ("PIC").[1]  He challenges the sufficiency and weight of the evidence and certain evidentiary rulings, and raises a claim based on prosecutorial misconduct.  After careful review, we affirm.[2]

**A.**

---

[1] 18 Pa.C.S. §§ 2502, 2705, 907(a).

[2] On October 11, 2024, Appellant filed a "Second Motion for Extension to File Reply Brief."  On October 14, 2024, he filed his Reply Brief. We accept his Reply Brief as timely filed and, thus, deny his October 11, 2024 motion as moot.

The trial court accurately summarized the factual history of this case as follows:

On June 22, 2019, at approximately 4:00 a.m., the decedent, Benjamin White, was walking down Market Street with a seventeen-year-old young woman, M.B. and another man, Christian Snowden. The decedent and Snowden were both intoxicated and Snowden was having difficulty walking straight. As they walked past a clothing store located at 5529 Market Street in Philadelphia known as New Grind Clothing, which was owned by [Appellant], Snowden lost his balance and fell into the store's front window, which shattered upon impact. After he fell into the window and the lights of the store came on, Snowden began to run east down Market Street in the direction of 55th Street. After Snowden began to run, the decedent ran in the same direction of Snowden while M.B. hid behind a pillar in the middle of the street about twenty feet from the store.[]

[Appellant] and his co-defendant Moffitt were inside of New Grind Clothing with a couple other men when Snowden fell into the window. After hearing the window break, several men, including [Mr. Moffitt and Appellant] armed with handguns, ran outside through the front door and chased the decedent outside of the store. At that time, M.B. repeatedly screamed that the window had been broken by accident. As the decedent ran away, [Appellant] aimed his gun at him and fired at least one shot. After [Appellant] began shooting, his co-defendant Moffitt aimed his gun in the direction of the decedent and began firing multiple shots. The decedent was struck once in the back and collapsed in the street about fifty feet from the store.

After the shooting, the co-defendants and the other men went back inside of New Grind Clothing and took the digital video recorder ("DVR"), which apparently had security footage from cameras located outside the front door and inside the store. After a few minutes, M.B., who remained on the scene to provide aid to the decedent, saw [Appellant], co-defendant Moffitt, and the other men leave the store carrying the DVR, get into a van parked out front, and drive away.

Calvin Houston, a neighbor who lived across the street from New Grind Clothing, was on his front porch at the time of the shooting.

Houston later identified [Appellant] and his co-defendant Moffitt as the shooters in photo arrays shown to him by police and at [Appellant's] preliminary hearing.

When police arrived at the scene, New Grind Clothing was unoccupied and had its front grate pulled down. Police noticed that there was a camera at the front door of the store and a second camera inside of the store. After searching the store, it appeared that a DVR from inside of the store that was connected to the cameras had been removed.

On the sidewalk in front of New Grind Clothing, police recovered two fired cartridge casings ("FAA's"), a .380 caliber and a .40 caliber. Police also recovered a .40 caliber FCC, seven live .380 rounds, a Smith & Wesson 9mm gun box, live 9mm ammunition, and two 9mm handgun magazines from within the store.

On June 27, 2019, police showed M.B. a photo array that included a photo of [Appellant]. At that time, she indicated that [Appellant] looked familiar, like one of the guys that was shooting. . . .

The decedent died from a single indeterminate range gunshot wound to the left midback. A copper-colored jacketed metal projectile was recovered from the decedent's body.

Tr. Ct. Op., 1/18/24, at 2-4.

After the incident, and significant to this appeal, Officer Martin Mitchell, who drove Mr. Houston to the police station for further questioning, spoke with his colleague Detective Bradley. Shortly thereafter, Officer Bradley memorialized the interview he conducted with Officer Mitchell. The interview report included Officer Mitchell telling Detective Bradley that in the police car, Mr. Houston had told him that he was "just off work and was inside his house when he heard the gunshots, then he ran out the house with no shirt or shoes to help the victim." Cmwlth. Exh. 25 ("Interview Report"). Notably, Officer Mitchell did not sign or swear to the interview report.

- 3 -

The Commonwealth arrested Appellant on June 26, 2020, and co-defendant Moffitt on October 15, 2020, and charged them each with the above crimes as well as Conspiracy and related offenses. At the preliminary hearing, held on July 7, 2021, Calvin Houston testified that he was on his front porch across the street from the clothing store, having returned home from working a night shift. He was looking at his cell phone as he smoked a cigarette, heard glass break and looked up. He saw the decedent running away from the store and, shortly thereafter, saw Appellant run out of the store and fire a gun at the decedent. He also testified that he heard M.B. yelling, among other things, that it was an accident. Houston stated that in speaking to police officers immediately following the incident and then to homicide detectives at the police station, he identified Appellant as the shooter who killed the decedent. He further testified that he later found on social media photos of Appellant hosting community events at the clothing shop and showed them to investigators. He testified that he had met Appellant previously while Appellant was working behind the counter at the store.

Defense counsel each cross-examined Mr. Houston, with Appellant's counsel challenging Mr. Houston's testimony about, *inter alia*, his location when he saw the shooting.

On July 31, 2023, prior to the start of trial, the Commonwealth filed a motion to admit Mr. Houston's preliminary hearing testimony because he had died prior to trial and was, thus, unavailable to testify. Counsel for both defendants opposed the motion, asserting, *inter alia*, that they did not have full discovery prior to the preliminary hearing. **See** N.T., 7/31/2023, at 13. Appellant's counsel acknowledged that he had cross-examined Mr. Houston about his testimony on direct examination, but asserted that he asked questions about those topics only to memorialize them on the record for preliminary hearing purposes and "if the Commonwealth thought that there was any chance of this [testimony] needing preservation, they would have given me the full discovery on the case at the preliminary hearing stage, thereby allow[ing] me to ask all the questions that I wanted to ask of him." **Id**. at 13-14. The Commonwealth noted that it had provided all the required discovery to counsel prior to the preliminary hearing. Additionally, Appellant's counsel did not identify the discovery that he did not have at the preliminary hearing and how having that discovery would have changed his cross-examination. The court, finding that Appellant had the opportunity for a fair and full hearing at the preliminary hearing, granted the motion and permitted the Commonwealth to present Mr. Houston's preliminary hearing testimony to the jury. **Id**. at 16.

On August 1, 2023, the trial began. M.B. testified and, for the first time, identified co-defendant Moffit in court as a shooter, stating that he had looked

directly at her during and after the shooting and she had recognized him in the courthouse corridor prior to trial. M.B. also testified that she did not recognize Appellant and had never seen him before. The court admitted into evidence the statements that M.B. had given to police investigators shortly after the shooting in which she stated, while looking at a photo array, that Appellant looked familiar and like one of the men who was shooting but that she didn't want to "blame the wrong guy." N.T., 8/1/23, at 205.

Mr. Houston's preliminary hearing testimony was then read into the record, including the portion that identified Appellant as the shooter. *See* N.T., 8/2/23, at 12-51.

Police officers and investigating detectives also testified. As discussed in more detail *infra*, Detective John Harkins explained how the police investigation led to Appellant's arrest. He also noted that the video recovered from street cameras had not captured the shooting and although there was evidence of a video security system inside and outside the clothing store, the police recovered no video equipment or recording devices from inside the store. *Id.* at 125.

The jury found Appellant and Mr. Moffitt guilty of First-Degree Murder, REAP and PIC.[34] Appellant waived a presentence investigation and mental health evaluation, and on September 21, 2023, the court sentenced him to life imprisonment without the possibility of parole. It imposed no further penalty for REAP and PIC. Following the denial of his post-sentence motion, in which he challenged the weight of the evidence, Appellant appealed.

**B.**

Appellant presents the following issues for our review:

1. Where the Commonwealth presented evidence of both innocence and guilt as the testimony of one Commonwealth eyewitness reflected Appellant was innocent and one reflected he was guilty, was the evidence so inherently inconsistent and caused the jury to speculate and guess as to guilt as to be insufficient as a matter of law?

2. Where the person who testified that Appellant was not guilty was mere feet from the shooting, whereas, the person who testified that the defendant was guilty was approximately 200 feet away; it was dark out when the incident occurred; and he had a potential obstructed view, did the lower court abuse its discretion in not granting a new trial since the verdict shocks the conscience?

3. Where the only person who inculpated the Appellant was inside his [s]econd [f]loor [r]ear apartment when the shooting occurred, instead of being outside as he testified, did the Commonwealth violate **Napue v. Illinois**, [360 U.S. 264 (1959),] when it improperly proffered that Appellant had a full

_____

[3] The jury found both men not guilty of Conspiracy, Obstructing Administration of Law or Other Governmental Function, and Tampering with or Fabricating Physical evidence. Co-defendant Moffitt's appeal is pending before this Court at 2860 EDA 2023.

and fair opportunity to cross-examine this witness when this gross inconsistency was not provided at the time of Appellant's preliminary hearing; and did the Commonwealth also violate *Napue* when it failed to correct this false testimony at trial?

4. Did the prosecutor commit reversible error in closing when it inferred [sic] the defendants had killed a critical witness in this case where there was no evidence of that having occurred and where it made an *ad hominem* attack by improperly denigrating defense counsel?

5. Did the lower [court] err in admitting the testimony of a homicide detective who improperly vouched for the eyewitness at trial?

Appellant's Br. at 4-5.[5]

## C.

In his first issue, Appellant purports to challenge the sufficiency of the identification evidence supporting his convictions.[6]   He contends that the testimony of M.B. and Mr. Houston regarding the identification of Appellant as a shooter was "inherently contradictory and in conflict," and  "[t]hus, . . . the evidence was inherently unreliable and . . . the Commonwealth has proved both innocence and guilt, making this evidence insufficient as a matter of law." Appellant's Br., at 17, 18.  Appellant asserts that "[g]iven the fact that the

---

[5] Although Appellant provides a "Statement of the Facts" with citations to the trial transcript, the citations correspond only to Appellant's counsel's closing statement and not to the actual evidence that would support the facts as he recites them.

[6] Appellant challenges only the sufficiency of the identity evidence and not the sufficiency of the evidence to establish the other elements of the crime. Accordingly, he has waived any challenge to the evidence supporting the other elements of each crime.

Commonwealth has presented evidence that [Appellant] was not at the scene of the crime, then any verdict had to rely solely on the Houston testimony. This caused the jury to have to speculate and guess, between the two versions and therefore, the evidence was insufficient as a matter of law to convict."

*Id*. at 20.

Our standard of review of a challenge to the sufficiency of the evidence is well-settled.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

First-Degree Murder is any unlawful killing committed with malice and the specific intent to kill. 18 Pa.C.S. § 2502(a). Accordingly, the Commonwealth must present evidence to establish, beyond a reasonable doubt, that (1) a person was unlawfully killed; (2) the defendant killed the person; and (3) the defendant acted with a specific intent to kill. *Commonwealth v. Buford*, 101 A.3d 1182, 1186 (Pa. Super. 2014). A person will be found guilty of REAP where the evidence shows that he "recklessly engage[d] in conduct which place[d] or may place another person

in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. A person will be found guilty of PIC where the evidence proves that "he possesse[d] any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a).

With respect to the sufficiency of the evidence presented to support the identification of the perpetrator of a crime, such evidence "needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." *Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973) (internal citations omitted). "Variances in testimony . . . go to the credibility of the witnesses and not the sufficiency of the evidence." *Commonwealth v. Galloway*, 434 A.2d 1220, 1222 (Pa. 1981). "A sufficiency of the evidence review does not include an assessment of the credibility of the testimony[.]" *Commonwealth v. Wilson*, 825 A.2d 710, 713 (Pa. Super. 2003). "Such a claim is more properly characterized as a weight of the evidence challenge." *Id.* at 714.

We start by rejecting Appellant's characterization of the evidence. Appellant asserts that the "Commonwealth has presented evidence that [Appellant] was not even at the scene of the crime." Appellant's Br. at 23. The record does not support this statement.[7]

_____

[7] At best, the record only supports the fact that police officers took no fingerprint or DNA evidence from the shop and, thus, no evidence placed him

*(Footnote Continued Next Page)*

Additionally, from our review of the record, viewing the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence to support the jury's determination that it was Appellant who shot the decedent. Mr. Houston identified Appellant as the first man to run out of the store with a firearm after the glass broke. N.T., 8/2/23, at 18-19, 38, 44. He also testified that Appellant shot the decedent and that co-defendant Moffitt also fired some shots at the decedent. *Id*. at 18-20. Additionally, both Mr. Houston and M.B. testified that when the shooting stopped, the men—including Appellant—ran back into the store before leaving shortly thereafter with at least two other men, holding a DVR or VCR device or computer, and getting into a van that was parked in front of the store before driving away. N.T., 8/1/23, at 211-214 (Testimony of M.B.), N.T., 8/2/23, at 19-21 (Testimony of Houston).

Thus, viewing the evidence and all reasonable inferences in the light most favorable to the Commonwealth as verdict-winner, we conclude that sufficient evidence supports the jury's verdict that Appellant committed the crimes of first-degree Murder, REAP, and PIC. Moreover, in light of the evidence presented at trial, we reject Appellant's conclusion that the verdict was the result of jury speculation.

_____

at the shop. *See* N.T., 8/2/23, at 125. This fact does not support Appellant's assertion that the Commonwealth presented evidence that Appellant was not at the scene. We remind counsel of its professional responsibility of candor to the court.

Finally, Appellant's argument that the testimony of Houston and M.B. are "inherently contradictory and in conflict" challenges the weight, not the sufficiency, of the evidence, which we address below. Appellant's sufficiency claim, thus, warrants no relief.

**D.**

Appellant next challenges the jury's weight determination that it was Appellant who shot the decedent and concludes that "the verdict shocks one's sense of justice." Appellant's Br. at 22. In support, he argues, without citation to the notes of testimony, that "[s]ince M.B.'s vantage was so much closer than Houston's, and she locked eyes with the shooter who[m] she thought was going to kill her, and it was dark outside, her testimony that [Appellant] was not even at the scene was far more compelling than that of Houston's." *Id*. at 23.

An argument that the verdict is "contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence." *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa. Super. 2002) (citation omitted). This Court does not consider *de novo* whether the verdict is against the evidence. *Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (citation omitted). Rather, "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Widmer*, 744 A.2d at 753. "Because the trial judge [ ] had the opportunity to hear and see the evidence

presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id*. A weight of the evidence claim is one of the least assailable reasons for granting a new trial. *Commonwealth v. Brown*, 648 A.2d 1177, 1189–90 (Pa. 1994). Thus, if the jury's findings are supported by the record, the trial court's denial of a motion for a new trial will not be disturbed. *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008). Our review is highly deferential: "we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).

We start again by highlighting that Appellant, without citation to the record, asserts that M.B. testified that Appellant "was not even at the scene." Appellant's Br. at 23. Our review of the record reveals that M.B. did not testify to this. Thus, we reject this portion of Appellant's argument.

Additionally, we find that the trial court did not abuse its discretion in denying Appellant a new trial based on his challenge to the weight of the evidence. *See* Tr. Ct. Op., 1/18/24, at 17 (concluding that the verdict did not "shock one's sense of justice."). Mr. Houston identified Appellant as the first man who came out of the shop shooting. N.T., 8/2/23, at 18-19.. M.B. also made a statement to the police officers within a week of the shooting where she identified Appellant as looking "familiar, like one of the guys who was shooting" at the decedent. *Id.* at 205.

Since it was within the province of the jury as factfinder to weigh the evidence and determine the credibility of the witnesses, we conclude that the court did not abuse its discretion in denying Appellant's weight claim.

**E.**

Appellant next argues that the Commonwealth violated his right to due process as provided in ***Napue v. Illinois***, 360 U.S. 264 (1959), when the Commonwealth argued at the hearing on its motion *in limine* that Appellant had a full and fair opportunity to cross-examine Mr. Houston at the preliminary hearing. Appellant's Br. at 25. He argues that the Commonwealth "failed to correct the false testimony of Houston" when arguing for its admission at trial. ***Id***. at 26. Appellant concludes that since he did not have the police interview report containing Officer Mitchell's responses to Detective Bradley's questions before the preliminary hearing, the Commonwealth violated Appellant's due process rights by "den[ying] the use of vital impeachment evidence at the preliminary hearing," and the Commonwealth, thus, made a misrepresentation to the court in arguing at the hearing on the motion in *limine* that Appellant had a full and fair opportunity to cross-examine Mr. Houston. ***Id***. at 29-30.

In ***Napue***, the U.S. Supreme Court reiterated that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment[.] The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." 360 U.S. at 269 (internal citations omitted).

In order to find a *Napue* violation, a court must conclude (1) the witness committed perjury; (2) the prosecution knew or should have known of their perjury; (3) the false testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony affected the verdict. *See id*., at 269-271.

In this case, Appellant focuses first on the legal argument that the Commonwealth made to the trial court that Appellant had a fair and full opportunity to cross-examine Mr. Houston at the preliminary hearing. Appellant characterizes the Commonwealth's argument as false. Appellant's Br. at 24. Appellant also contends, with reference to Officer Mitchell's interview report, that "[t]he failure to disclose this enormous discrepancy in the Houston testimony on two occasions, constituted misrepresentations both to the lower court and to the jury, which was significant because only Houston implicated [Appellant] in the shooting." *Id.* at 25.

The trial court addressed Appellant's claim raised on appeal and concluded that the "Commonwealth did not commit any *Napue* violation by presenting argument that Houston's preliminary hearing testimony was admissible." Tr. Ct. Op. at 8.

We conclude that the trial court properly rejected Appellant's claim. Since Appellant is challenging the Commonwealth's presentation of a legal **argument** presented at the hearing, Appellant has failed to establish the foundational requirement to establish a *Napue* violation. *See Commonwealth v. Puksar*, 951 A.2d 267, 280 (Pa. 2008) (reiterating that

Counsel's **arguments** presented in support of a motion **are not evidence**). Thus, the Commonwealth did not present "false evidence" during the hearing on the motion.

Appellant also argues that because Officer Mitchell told Detective Bradley that Mr. Houston told him that Mr. Houston was inside the apartment when Mr. Houston heard the gunshots, Mr. Houston committed perjury when he testified at the preliminary hearing. Mr. Houston's testimony about his location when he heard gunshots, however, was consistent with Mr. Houston's formal statement to the police. Officer Mitchell's hearsay statement to Detective Bradley does not establish that Mr. Houston committed perjury. The hearsay statement about Mr. Houston's location and Mr. Houston's other statements under oath present, at best, a discrepancy and not perjury. **See**, **e.g.**, **Lambert v. Blackwell**, 387 F.3d 210, 249 (3rd Cir. 2004) (testimony elicited by prosecutor presented a "discrepancy," not perjury).[8]

_____

[8] We also note, as the trial court aptly observed, that "statements made by a witness prior to trial are subject to disclosure only when they are signed, adopted or otherwise shown to be substantially verbatim statements of that witness." **See** Tr. Ct. Op., at 7 (quoting **Commonwealth v. Cruz-Centano**, 668 A.2d 536, 543 (Pa. Super. 1995) (holding that where a police officer summarizes a witness statement in an interview report, the Commonwealth is not obligated to disclose the report prior to the preliminary hearing)); **see also Commonwealth v. Brinkley**, 480 A.2d 980, 984 (Pa. 1984) (reiterating that "statements made by a witness prior to trial are subject to disclosure only when they are signed, adopted or otherwise shown to be substantially verbatim statements of that witness."). Since Officer Mitchell's statement regarding his conversation with Mr. Houston in the police car was neither signed nor adopted by Officer Mitchell, "it cannot be said that the withholding thereof deprived [A]ppellant of the opportunity for a full and fair cross-
_(Footnote Continued Next Page)_

Further, because Mr. Houston's testimony was not perjury, we disagree with Appellant's contention that the Commonwealth presented "false evidence" at trial. *See* Appellant's Br. at 29-30 (asserting that Houston's testimony was false and the Commonwealth nonetheless "presented this testimony as truthful and consistent, in many ways, with that of M.B.").

Finally, we note that Appellant failed to challenge on appeal the trial court's determination that Appellant had a fair and full opportunity to cross-examine Mr. Houston at the preliminary hearing without Officer Mitchell's statement. Thus, we lack jurisdiction to review the trial court's conclusion that even without Officer Mitchell's statement, Appellant had a fair and full opportunity to cross-examine Mr. Houston.

**F.**

In his fourth issue, Appellant contends that "multiple instances of improper argument" during the Commonwealth's closing argument "compel the grant of a new trial." Appellant's Br. at 30. Specifically, Appellant focuses on two comments. He first contends that the prosecutor's comment—that "snitches get stitches" and "they also can get bullets"—"stripped [Appellant] of the presumption of innocence and was incredibly prejudicial" because "[i]n essence, the prosecutor impermissibly implied that the defendants had caused Houston's death when there was no evidence that either defendant was

---

examination of [Houston] at the preliminary hearing as contemplated in ***Commonwealth v. Bazemore***, [614 A.2d 684 (Pa. 1992)]." ***Cruz-Centano***, 668 A.2d at 543.

- 17 -

involved." *Id*. at 31. He also asserts that the prosecutor made an "*ad hominem* attack on defense counsel," by "stating that it was the defense counsel's job to gain an acquittal, which by implication shifted the Commonwealth's unwavering burden to Appellant while at the same time, denigrating defense counsel." *Id.*, at 33.

We review a claim of prosecutorial misconduct under the following legal precepts:

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Commonwealth v. Toritto*, 67 A.3d 29, 37 (Pa. Super. 2013) (citation omitted). *See also Commonwealth v. Robinson*, 877 A.2d 433, 441 (Pa. 2005) (holding that prosecutorial misconduct does not occur unless the jurors form a fixed bias and hostility toward the defendant based on the prosecutor's comments).

Our Supreme Court has "recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial." *Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa. Super. 2016). Further, an immediate correction by the trial court following a ruling sustaining an objection to a statement made during closing argument may "neutralize[ ]"

any possible prejudicial effect of the challenged comment. ***Commonwealth v. Martinolich***, 318 A.2d 680, 687-88 (Pa. 1974).

Finally, "it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered." ***Jaynes***, 135 A.3d at 615.

The following excerpt from the notes of testimony provides the necessary context for our consideration of this issue.

> **Prosecutor**:  . . .  It gets a little heavier when you have to deal with the witnesses who, as you might imagine, are not anxious and banging down the door to come into court and to testify in a criminal case, in general, and, certainly, not a homicide because the stakes are high in a homicide.  And when you come into a court of law and point fingers at people, well, what is the expression?  Snitches can get stitches.
>
> **Appellant's Counsel**:  Objection.
>
> **Prosecutor**:  And they can also get bullets.
>
> **Court**:  Did I hear an objection?
>
> **Appellant's Counsel**:  You did.
>
> **Court**:  Okay.  That's sustained.  There's no evidence of anything like that in this case.
>
> **Prosecutor**:  And so you overcome the hesitancy of witnesses to come forward.  And then, they get called into court, and they get stripped of their humanity; just like I promised you.
>
> -- and by the way, he said I was going to take a run at him.  I'm not going to take a run at him.  I'm not.  It's not personal.  It's not.  I will take issue with what he said.  I will even take issue with some of the things; how he said it.  But he's got a job to do. His job is to get his client off.  That's his job.
>
> **Appellant's Counsel**:  Objection.
>
> **Court**:  Sustained.

* * * *

N.T., 8/2/23, at 249-51.

In addressing the claim Appellant raised in this appeal, the trial court found that its instruction to the jury, provided immediately after it sustained Appellant's objection, adequately informed the jury that this case did not involve any evidence of witness retaliation. After reciting relevant law, the trial court concluded:

> The prosecutor's statement regarding witnesses' reluctance to come forward and testify for fear of retaliation did not amount to reversible error. These comments did not allege or imply that the Defendants were in anyway involved in or responsible for Calvin Houston's death and subsequent availability as a witness. **The prosecutor's statement was simply a general statement about witnesses who do testify and an attempt to bolster the credibility of the civilian witnesses who testified at the Defendants' trial.** The prosecutor's comments did not form in the jurors' minds a fixed bias and hostility toward the Defendants that would cause them not to weigh the evidence objectively and render a fair verdict. Regardless, after the prosecutor's comment, this [c]ourt immediately sustained defense counsel's objection and provided the jury with an instruction making it clear that there wasn't anything like that in this case.

Tr. Ct. Op., at 13, *citing* N.T., 8/2/23, at 249-50.

We agree with the trial court. When read in the context of the prosecutor's closing argument, and considered in light of the court's immediate instruction, we conclude the comment did not "unavoidably prejudice[] the jury and prevent [] a true verdict." ***Toritto***, 67 A.3d at 37.

The trial court also found meritless Appellant's contention that the prosecutor's second challenged comment shifted the Commonwealth's

"unwavering burden to Appellant at the same time denigrating defense counsel." Appellant's Br. at 33. The court concluded it properly informed the jury that a defendant is not required to prove his own innocence, stating:

> After the prosecutor stated that it is defense counsel's job to get his client off, this [c]ourt sustained defense counsel's objection and granted his request for a curative instruction. This [c]ourt informed the jury, in no uncertain terms, that the prosecutor's statement was stricken from the record, the jury was to disregard any comment about defense counsel's job, and clarified that a defense attorney has an ethical duty to zealously represent their client. This [c]ourt made clear to the jury that a defendant is innocent until proven guilty, a defendant is not required to prove his own innocence, and that the burden is on the Commonwealth to prove that a defendant is guilty of each of the crimes charged beyond a reasonable doubt. *See* N.T., 8/2/23, at 282; 8/3/23 at 3-5, 11-14.
>
> None of the prosecutor's comments during closing argument were so prejudicial that they caused the jury to form a bias or hostility.

Tr. Ct. Op. at 14.

Based on our review of the record, we conclude that the prosecutor's comment regarding defense counsel's job did not cause the jury to form a fixed bias and hostility toward Appellant. Moreover, the court gave a proper curative instruction while charging the jury, an instruction to which counsel did not object. Accordingly, we conclude Appellant's request for a new trial based on the prosecutor's two challenged comments is meritless.

### G.

In his final issue, Appellant contends that the court erred in allowing Detective Harkins to "vouch" for M.B. when he testified that a mark under a photograph of Appellant "looks like M.B." Appellant's Br. at 35. He also

contends that Detective Harkins "vouched" for Houston's credibility when he testified that "Calvin Houston identified [Appellant.]" *Id*. Appellant asserts this testimony "vouch[ed] for the credibility of these witnesses when the credibility of Houston was not seriously attacked in front of the jury, and M.B. clearly stated that [Appellant] was not even present at the scene." *Id*. at 37. This issue is waived.

It is well settled in Pennsylvania that a party must make a timely and specific objection at trial in order to preserve an issue for appellate review. Pa.R.A.P. 302(a); *see also Commonwealth v. Montalvo*, 641 A.2d 1176, 1185 (Pa. Super. 1994) ("In order to preserve an issue for review, a party must make a timely and specific objection at trial"). Failure to do so results in waiver of that issue on appeal. *See* Pa.R.A.P. 302(a) Note.

With respect to preserving challenges to the admission or exclusion of evidence, Pa.R.E. 103 addresses rulings on evidence and requires a contemporaneous objection to preserve a claim of error in the admission of evidence which raises the specific ground on which the objection is based. Pa.R.E. 103(a).

Our review of the record reflects that M.B. testified regarding her initials written under Appellant's picture in a photo array that she was shown on June 27, 2023. N.T., 8/1/23, at 203-205. The next day, Detective Harkins testified about the investigation and, generally, about procedures followed by police investigators where there are eyewitnesses. After Detective Harkins noted that Detective George Fetters had shown the photographic array to M.B.,

Appellant's counsel raised a general objection and requested a sidebar. N.T., 8/3/23, at 74. The sidebar occurred off the record. Following the sidebar, the Commonwealth continued to ask Detective Harkins questions about the photo array shown to M.B. *Id*. Counsel did not object after this testimony. *Id*. at 76. Because Appellant did not make a timely, on-the-record objection to Detective Harkins' testimony specifically challenging it as "vouching," Appellant failed to preserve this issue for our review.

With respect to Detective Harkins' testimony that Mr. Houston was shown a different photo array from that shown to M.B., Appellant's counsel raised the "same objection," without specifying the objection on the record. *Id*. After the court overruled the objection, the trial court interrupted the Commonwealth's direct examination of Detective Harkins to provide a cautionary instruction to the jury. *Id*. at 77. The court informed the jury that because Mr. Houston is dead and the photographs weren't shown at the preliminary hearing,

> these [photos] are not offered for the truth of the matter because the witness can't be cross-examined about the specific photograph. But it's being offered because this is one of the assigned detectives that was responsible.
>
> So in the course of conduct, you are entitled to hear how the investigation progressed, and why arrest warrants were prepared. So you can't use – you use this evidence differently. And this is only as it pertains to [Appellant]. But you use it differently than what you receive [sic] the evidence yesterday from, and part of it, again, today about [M.B.] because she was here and she had – there was cross-examination.

N.T., 8/2/23, at 77. The record reflects that counsel did not object to this cautionary instruction or otherwise raise an objection that Detective Harkins was vouching for Mr. Houston.  Because Appellant failed to preserve his claim of error alleging vouching, it is waived.

**H**.

Having found each of Appellant's issues meritless or waived, we affirm the judgment of sentence.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/6/2025